IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

EDDIE FULLARD, )
)
      Plaintiff, )
)
v. ) CIVIL ACTION NO.: CV507-072
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
      Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Lee Ellis Davis ("ALJ" or "ALJ Davis"), denying his claim for Disability Insurance Benefits and Supplemental Security Income ("SSI") disability payments. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff protectively applied for Disability Insurance and SSI benefits on January 31, 2005, alleging he became disabled on August 11, 2002, as the result of shortness of breath and a heart attack. (Tr. at 76). After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On March 21, 2007, ALJ Davis held a hearing at which Plaintiff appeared and testified. Melissa Brooks, a vocational expert, also testified at this hearing. (Tr. at 394). ALJ Davis found that

Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). (Tr. at 28). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 11-13).

Plaintiff, born on May 2, 1965, was forty-one (41) years old when ALJ Davis issued his decision. He has a tenth grade education. (Tr. at 396). His past relevant work experience includes driving a lawn-mowing tractor, working as a farmhand, doing construction work, and doing assembly. (Tr. at 93-100, 398-400).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is

presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to adjust to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F. 3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date of August 11, 2002, there was no evidence that Plaintiff engaged in substantial gainful activity. (Tr. at 23). At step two, the ALJ determined that Plaintiff had ischemic heart disease and a history of alcohol and nicotine dependence. These conditions are considered "severe" under the Regulations. (Id.). However, the ALJ also determined, at step three, that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Tr. at 25). The ALJ found that Plaintiff had the residual functional capacity to perform work at the medium exertional work level, but is to avoid concentrated exposure to hazards such as machinery and heights. (Tr. at 25). At the fourth step, ALJ Davis concluded that Plaintiff could perform his past relevant work as an assembler. (Tr. at 27).

## ISSUES PRESENTED

The issues presented in this review are whether: 1) the ALJ properly discredited Dr. Garcia's findings as to the Plaintiff; and 2) there was substantial evidence supporting the ALJ's decision that Plaintiff could return to his past relevant work.

## **STANDARD OF REVIEW**

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F. 2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F. 2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F. 3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F. 2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

**The ALJ's Determination that Plaintiff Could Return to His Past Relevant Work is Supported by Substantial Evidence.[1]**

Plaintiff contends that the denial of his disability benefits is not supported by substantial evidence. Plaintiff further contends that the ALJ improperly discredited Dr. Garcia's physical capacities evaluation and opinion. (Doc. No. 24, p. 7). Plaintiff asserts that the ALJ's statement that Dr. Garcia had only seen Plaintiff twice before he issued his opinion is without merit. (Id. at 8). Plaintiff further asserts that the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. (Id. at 9) (citing Lewis v. Callahan, 125 F. 3d 1436 (11th Cir. 1997)). Plaintiff contends that ALJ Davis did not show good cause for discounting the functional capacity evaluation of Dr. Garcia, Plaintiff's long term treating physician. (Doc. No. 24, p. 9).

Defendant asserts that there was substantial evidence supporting the ALJ's decision to discount Dr. Garcia's medical opinion. (Doc. No. 25, pp. 12-16). Defendant further asserts that there is substantial evidence supporting the ALJ's decision that Plaintiff had the residual functional capacity to return to his past relevant work. (Id. at 16-17).

A treating physician's opinion is entitled to substantial weight unless good cause not to do so exists. Edwards v. Sullivan, 937 F. 2d 580, 583 (11th Cir. 1991); Jones v. Bowen, 810 F. 2d 1001, 1005 (11th Cir. 1986). There is good cause when the medical opinion is conclusory, unsupported by objective medical findings, or not supported by

---

[1] The Court has combined Plaintiff's enumerations of error in its review of the ALJ's determination that Plaintiff could return to his past relevant work.

evidence from the record. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997); Edwards, 580 F. 2d at 583. When the Commissioner rejects the opinion of the treating physician, he must give "explicit and adequate" reasons for the rejection. Elam v. Railroad Retirement Board, 921 F. 2d 1210, 1215 (11th Cir. 1991). The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefore." Sharfarz v. Bowen, 825 F. 2d 278, 279 (11th Cir. 1987).

ALJ Davis found that Plaintiff has the severe impairment of ischemic heart disease and a history of alcohol and nicotine dependence. (Tr. at 23). The ALJ remarked that Plaintiff has a history of myocardial infarction. Plaintiff was noted at that time to be a heavy smoker and to have a chronic ethanol intake with elevated liver function studies. Plaintiff underwent a successful two-vessel coronary artery bypass graft surgery. Postoperative records reveal he was stable with some chest wall discomfort related to exertion. (Tr. at 23). The ALJ observed that Plaintiff had a negative stress thallium test and had no anginal symptoms. (Tr. at 23). The ALJ remarked that Dr. Stanley Wallace's examination of Plaintiff revealed a normal cardiovascular examination, with no murmurs, clicks, or gallops. Dr. Wallace noted a shortness of breath and that the accessory muscles of respiration were used in breathing. A chest X-ray was normal and Dr. Wallace opined that Plaintiff had no evidence of recurrent angina. ALJ Davis observed that subsequent pulmonary function studies were normal with a VC of 4.26 pre-bronchodilators and 4.40 post bronchodilators and a FEV1 of 3.21 pre-bronchodilators and 3.62 post bronchodilators. (Tr. at 23). Dr. Hector C. Manlapas and Dr. John Hassinger concluded that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, could stand or

walk for about six hours in an eight hour workday, and could sit for the same length of time. (Tr. at 366-382). The ALJ remarked that while Plaintiff complained of left thigh pain when walking in July 2006, a Doppler of the lower left extremity obtained that month was normal, as was a CT angiogram of the abdomen. ALJ Davis noted that the pelvis CT with bilateral lower extremity runoff demonstrated no significant calcification involving the three vessel runoff of the left lower extremity. The ALJ did note that there was evidence of complete occlusion of the left superficial femoral artery in the mid and proximal thigh. The ALJ remarked that other than this one instance of occlusion, there is no subsequent evidence to document that this impairment met the Regulations' duration requirements. (Tr. at 25).

ALJ Davis observed that Dr. Roberto Garcia opined that Plaintiff has a less than sedentary residual functional capacity. Dr. Garcia found Plaintiff to be able to lift and carry less than 10 pounds on both an occasional and frequent basis. The ALJ remarked that, in Dr. Garcia's opinion, Plaintiff could stand and walk for two hours, sit for two hours, and that Plaintiff needed a sit/stand option. Dr. Garcia opined that Plaintiff would need to lie down at unpredictable intervals during a work shift. Dr. Garcia further opined that Plaintiff's handling, fingering, and feeling were affected by his impairments. Dr. Garcia remarked that Plaintiff needed to avoid all exposure to extreme cold, heat, fumes, odors, dust, gasses, and poor ventilation. (Tr. at 24).

ALJ Davis discounted Dr. Garcia's opinion regarding Plaintiff's lifting ability; standing ability; walking ability; need to lie down during the day; and handling, fingering, and feeling limitations. The ALJ first noted that according to the medical record before him, Dr. Garcia only examined Plaintiff on two occasions prior to rendering his opinion

that Plaintiff could not perform substantial gainful activity.[2] ALJ Davis next noted that Dr. Garcia's office records fail to support his opinion. Dr. Garcia's examinations revealed a regular heart rate and rhythm, with no murmurs. The examinations also revealed that Plaintiff had no edema or clubbing in the extremities. The only positive finding was some perilumbar tenderness. ALJ Davis also noted that Dr. Garcia opined that the basis for Plaintiff's need to lie down and his sitting, walking, and lifting limitations was "severe pain in lumbo-sacral area." The ALJ remarked that, in contrast to Dr. Garcia's opinion, Dr. Wallace found Plaintiff to have full range of motion of the lumbar spine, with a normal neurological examination that contained no motor loss and no evidence of reflex, sensory, or motor finding to suggest nerve root compression. ALJ Davis further remarked that prior neurological examinations were also normal. ALJ Davis observed that the Regulations require that an impairment must result from an anatomical, physiological, or psychological abnormality, which can be shown by medically acceptable clinical and laboratory diagnostic techniques. Further, a physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not by just the Plaintiff's statement of symptoms. The ALJ remarked that there is no medical evidence in Dr. Garcia's records, or elsewhere, of a documented lumbar or other impairment which would cause Plaintiff to have severe lumbar pain. ALJ Davis finally noted that Dr. Garcia opined that Plaintiff had limitations in his handling, fingering, and feeling ability, with the basis for these limitations being

---

[2] Plaintiff contends that the ALJ's statement that Dr. Garcia had only seen Plaintiff twice indicates that the ALJ did not sufficiently review the evidence before him because the record contains evidence of Dr. Garcia examining Plaintiff on numerous occasions. (Doc. No. 24, pp. 8-9). It should be noted that it is not clear whether ALJ Davis was concluding that Dr. Garcia had only examined Plaintiff twice total, or merely that Dr. Garcia had only examined Plaintiff twice in preparation for his physical capacities evaluation. Regardless, the issue is not dispositive, as there is substantial evidence supporting the ALJ's decision.

"pain- low back". The ALJ observed that low back pain would not impact an individual's ability to handle, finger, or feel. The ALJ remarked that Dr. Wallace's examination revealed full range of motion in all joints, including the wrists and elbows. Dr. Wallace's examination further revealed that Plaintiff was able to make a full fist without difficulty. ALJ Davis observed that Plaintiff reported no complaints of any difficulty using his hands to Dr. Wallace. (Tr. at 24-25).

ALJ Davis found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1. (Tr. at 25). The ALJ remarked that after a careful consideration of the entire record, he found Plaintiff to have the residual functional capacity to perform medium exertional work, with the limitation of avoiding concentrated exposure to hazards such as machinery and heights. ALJ Davis concurred with the opinions of Dr. Wallace, Dr. Manlapas, and Dr. Hassinger, who found Plaintiff able to do medium exertional work. The ALJ noted that these opinions were corroborated by, and consistent with, the medical evidence of record. The ALJ considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, as required by the Regulations.

ALJ Davis noted that there is a two step process for considering a plaintiff's symptoms. The ALJ must first determine whether there is an underlying medically determinable physical or mental impairment. This would be an impairment that could be shown by medically acceptable clinical and laboratory diagnostic techniques to reasonably be expected to produce the Plaintiff's pain or other symptoms. (Tr. at 25). Once this has been shown, the ALJ must evaluate the intensity, persistence, and

limiting effects of a plaintiff's symptoms to determine the extent to which they limit the plaintiff's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire record. Because a plaintiff's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, the ALJ must consider other kinds of evidence in addition to the objective medical evidence when assessing the credibility of the plaintiff's statements. (Tr. at 26).

ALJ Davis found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms was not entirely credible. The ALJ remarked that Plaintiff testified that he could walk for only 20-25 feet before he had leg and back pain and that he could only stand and sit for 30 minutes. The ALJ noted that eight days after Plaintiff's successful two-vessel bypass surgery, he told Dr. Martin that he had been very active at home raking leaves, but with some chest pains. Plaintiff later remarked to Dr. Martin that he had been working pretty hard and reported picking up a 50 pound sack of dog food. (Tr. at 26). Dr. Martin's examination of Plaintiff at that time was normal and an EKG was much improved from a prior EKG. (Tr. at 26-27). ALJ Davis observed that four months after his surgery, Plaintiff told Dr. Martin that he had no shortness of breath or swelling in his extremities. Plaintiff also said his chest pains were less frequent and much better than they had been. The ALJ noted that Plaintiff reported in a checkup as being able to walk a lot

farther without tiring. The ALJ further noted that none of Plaintiff's records subsequent to his bypass surgery support Plaintiff's allegations of difficulty walking, standing, and sitting. The ALJ opined that Plaintiff's allegations of daily chest pain prohibiting him from working is not corroborated by, and is in fact, inconsistent with the medical and other evidence of record. ALJ Davis observed that Plaintiff failed to report his alleged daily chest pains to Dr. Garcia when he was examined in the months directly preceding the hearing. ALJ Davis further observed that Dr. Garcia's examination revealed a regular heart rate, with no murmurs or gallops. The ALJ remarked that Dr. Wallace's examination revealed a normal cardiovascular examination with no murmurs, clicks, or gallops. A chest x-ray was normal and Dr. Wallace opined that Plaintiff had no evidence of recurrent angina. The ALJ noted that Plaintiff's 2004 studies showed an ejection fraction of 53%, with no ischemic changes. A 2006 cardiac event monitor revealed sinus rhythm and only one premature ventricular contraction. No other arrhythmias, tachycardia, or bradycardia episodes occurred. ALJ Davis remarked that Plaintiff testified that he drove 10-15 miles per week, washed his clothes, and helped his brother mow the grass using a riding lawn mower. ALJ Davis observed that Plaintiff testified that he lies down 4-5 times per day for approximately 45 minutes. The ALJ further observed that Plaintiff's mother testified that she sees him 3-4 times per week and he has to lie down 3 or 4 times per day. The ALJ remarked that no physician, other than Dr. Garcia, whose opinion has been discounted, has ever placed these limitations on Plaintiff. The ALJ further remarked that the medical evidence of record fails to corroborate these alleged functional limitations. ALJ Davis noted that Plaintiff failed to follow medical advice. The ALJ observed that Plaintiff was diagnosed with drug abuse

after a 2003 drug screen was positive for THC. The ALJ noted that a review of the record discloses that Plaintiff continued to smoke and use alcohol after his myocardial infarction, despite being instructed and counseled multiple times by his treating physicians to discontinue these practices. ALJ Davis further noted that Plaintiff testified at the hearing that he continued to smoke, but failed to mention if he continued to abuse either alcohol or drugs. (Tr. at 27).

ALJ Davis found Plaintiff to be capable of performing past relevant work as a sub assembly worker. ALJ Davis noted that this work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. ALJ Davis further found that Plaintiff is able to perform the job as it is actually performed. The ALJ observed that vocational expert Melissa Brooks testified at the hearing that Plaintiff could return to his past work as a sub assembly worker, a medium semi-skilled job. (Tr. at 27). The ALJ found that Plaintiff has not been under a disability, as defined in the Act, from August 11, 2002, through the date of his decision on April 23, 2007. (Tr. at 28).

The record contains substantial evidence supporting the ALJ's conclusion that Plaintiff could return to work as a sub assembly worker. ALJ Davis had "good cause" not to give substantial weight to Dr. Garcia's opinion that Plaintiff was unable to work. See Edwards, 937 F. 2d at 583. Additionally, the ALJ stated with particularity the reasons he did not give Dr. Garcia's conclusions controlling weight. See Sharfarz, 825 F. 2d at 279. Furthermore, the ALJ noted that Dr. Garcia's office records did not support his opinions, Dr. Wallace's conclusions did not support Dr. Garcia's opinions (Tr. at 24-25), other medical examinations such as a Doppler of the lower left extremity

and a CT angiogram of the abdomen did not support Plaintiff's allegations (Tr. at 25), and a vocational expert testified that Plaintiff could return to his past work as a sub assembly worker (Tr. at 27). Accordingly, ALJ Davis discrediting Dr. Garcia's opinion and the ALJ's determination that Plaintiff could return to his past relevant work is supported by substantial evidence and is based on appropriate legal standards. See Cornelius, 936 F. 2d at 1145.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 4th day of November, 2008.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE